William EATON, et al., Plaintiffs,

v.

Pat D'AMATO, et al., Defendants;

THOMAS NATIONAL GROUP, INC.,
Third-Party Plaintiff,

v.

FEDERAL INSURANCE COMPANY,
Third-Party Defendant;

TRUST FUND ADMINISTRATORS,
INC., Third-Party Plaintiff,

v.

AETNA CASUALTY AND SURETY
COMPANY, Third-Party
Defendant.

Civ. A. No. 79–1105.

United States District Court,
District of Columbia.

May 1, 1980.

George B. Dreisen, Ronald Rosenberg, Barry S. Slevin, Washington, D.C., for plaintiffs.

Theodore E. Rhodes, James M. Lenaghan, Washington, D.C., for defendants.

Roger W. Heald, Washington, D.C., for third-party defendant Aetna.

William Bradford, Jr., Washington, D.C., for third-party defendant Federal Ins. Co.

## MEMORANDUM OPINION

GESELL, District Judge.

This action, seeking compensatory and punitive damages for various alleged breaches of fiduciary and contractual duty, is brought by eight trustees on behalf of themselves and the two employee benefit plans [1] for which they act as named fiduciaries. Defendants are six individuals who serve as officers and/or directors for Trust Fund Administrators, Inc. ("TFA"), a corporation administering employee benefit plans, or for its corporate parent, Thomas National Group, Inc. ("TNG"). Both corporations also are named as defendants. Plaintiffs contend that TFA, which served as "administrator" [2] for the two plans until December 31, 1978, willfully failed to satisfy standards of fiduciary responsibility applicable under the Employee Retirement Income Security Act of 1974, 29 U.S.C. §§ 1001 et seq. (1976) ("ERISA"). TFA is accused of deliberately and maliciously preventing the orderly transfer of delegated authority from itself to its designated successor, through certain acts of omission and affirmative disruption. Plaintiffs seek compensatory relief for having incurred unnecessary administrative and legal expenses estimated at $60,000 incident to the transfer of authority. They also claim punitive damages. Jurisdiction of this Court

---

**1.** Both the Washington Area Carpenters' Welfare Fund and the Washington Area Carpenters' Pension & Retirement Trust Fund are employee benefit plans within the meaning of the Employee Retirement Income Security Act of 1974 ("ERISA"). See 29 U.S.C. § 1002(3) (1976).

**2.** See 29 U.S.C. § 1002(16) (1976).

is asserted under Section 502 of ERISA, 29 U.S.C. § 1132 (1976).[3] Plaintiffs have requested a jury trial.

After preliminary pretrial discovery, defendants here move to dismiss or, in the alternative, for summary judgment, on a variety of legal issues. They contend that TFA is not a "fiduciary" within the meaning of ERISA, and accordingly neither the corporation nor its officers can be sued under the statute. Defendants assert further that even if jurisdiction exists under ERISA, that statute does not authorize action for punitive damages. Finally, defendants seek dismissal of count three of the complaint for lack of standing,[4] and dismissal of the individual defendants for lack of personal jurisdiction.[5]

Collateral to the main action, defendants TFA and TNG filed third-party complaints against their respective insurers, Aetna Casualty & Surety Company ("Aetna") and Federal Insurance Company ("Federal"). Each defendant corporation seeks to enforce against its insurer a duty to defend and to indemnify in connection with the violations alleged in plaintiffs' complaint. The two insurers have moved for summary judgment, in both instances claiming the terms of their policies do not cover defendants for the acts alleged by plaintiffs. While the policies themselves differ markedly regarding the precise scope and nature of protection afforded, each insurer advances a purely legal argument against its insured, and no material facts are in dispute.

All of the above-mentioned issues have been thoroughly, indeed excessively, briefed, and the Court has heard oral argument.

### TFA's Status as a Fiduciary

The Welfare Fund and the Pension and Retirement Fund are administered by eight trustees. Four are appointed by employer members of the Construction Contractors Council of Washington, D.C., and the other four by the Washington Area Carpenters' District Council, or union. The broad purpose of these funds is to distribute various benefits to eligible employees and their dependents, including medical and hospital care, pensions, compensation for work-related injuries and death benefits. Payment into the funds is governed by collective bargaining agreements with the union, to which all signatory employers are parties.

TFA provided a range of administrative and management services for the two funds and their trustees over a period of some 20 years. The last contracts signed by the parties, effective September 1, 1971, governed the performance of these services until TFA's termination on December 31, 1978.[6] Under these agreements TFA was required, *inter alia*, to collect contributions, administer the funds' bank accounts and keep appropriate financial records; to process and adjudicate claims for medical care; to supervise operation of the dental clinic; to summarize the status of the funds on a monthly basis and report to the trustees; and to attend and transcribe minutes for all regular trustee meetings. Defendants view these specified duties, and others performed incident thereto, as purely ministerial, and nondiscretionary. Based on an alleged lack of discretion, defendants argue that they are not fiduciaries within the statutory definition contained at 29

---

**3.** Plaintiffs' breach of contract claim, alleging substantially identical facts, and their claim regarding TFA's transfer of assets to its sole shareholder, TNG, are before the Court based on the doctrine of pendent jurisdiction.

**4.** Count three seeks to secure plaintiffs' interests as creditors in light of the transfer of assets by TFA, an allegedly insolvent corporation, to its sole stockholder, TNG.

**5.** In their opposition to defendants' motion, plaintiffs state that they do not object to dismissing defendants Pero and Fiumefreddo. Plaintiffs have apparently conceded that these two defendants exercised no fiduciary responsibilities. *See* supplemental memorandum in opposition to defendants' motion to dismiss, Feb. 21, 1980, at 2. Accordingly, these two defendants are voluntarily dismissed from the action.

**6.** *See* Exhibits A & B to plaintiffs' original complaint, April 20, 1979.

U.S.C. § 1002(21)(A) (1976).[7] Despite the presence in both ERISA[8] and the Trust Fund Agreements[9] of provisions permitting the delegation of fiduciary responsibilities, it is urged that no such delegation occurred here. Defendants instead claim that the diverse functions identified above were performed by TFA under the direction and supervision of the trustees, within a tight framework of rules, interpretations, policies and practices which the trustees established over time. *See* 29 C.F.R. § 2509.75–8 at D–2 (1979).

Defendants' reading of the statutory definition and its applicability to these facts is unduly restrictive. Congress enacted ERISA as a comprehensive remedial statute, and a liberal construction is warranted to effect the statute's remedial purpose. The Act is designed to safeguard the interests of employees and their dependents whose widespread participation in employee benefit programs was seen as vitally important to successful industrial relations, employment stability, and the flow of interstate commerce. 29 U.S.C. § 1001 (1976). To this end, the Act imposes strict standards of conduct on individuals and organizations occupying positions of confidence or trust with respect to employee benefit plans. *See* 29 U.S.C. §§ 1104, 1106–09 (1976). The legislative history is replete with indications of congressional concern to assure adequate protection for the interests of plan participants and beneficiaries beyond that available under conventional trust law. *See, e.g.,* S.Rep. No. 127, 93d Cong., 1st Sess. 28–29 (1973), *reprinted in* [1974] U.S. Code Cong. & Admin.News 4838, 4864–65;

H.R.Rep. No. 533, 93d Cong., 1st Sess. 11–12 (1973), *reprinted in* [1974] U.S.Code Cong. & Admin.News 4639, 4649–51. *See generally* 120 Cong.Rec. 29194 (1974) (Rep. Biaggi); 120 Cong.Rec. 29932 (1974) (Sen. Williams), 120 Cong.Rec. 29951 (1974) (Sen. Bentsen), 120 Cong.Rec. 29962 (1974) (Sen. Beall). Applying a restrictive judicial gloss to the term "fiduciary" itself would, in effect, enable trustees to transfer important responsibilities to a largely immunized "administrative" entity. A clear congressional desire to expand the scope of fiduciary standards of conduct should not be so undermined.

Nothing in the language of section 1002(21)(A) is to the contrary. Indeed the actual definition here at issue applies to a person who exercises *any* discretionary authority regarding the plan's management or administration. As the Conference Report makes clear, Congress fully expected this definition to encompass consultants and advisors whose special expertise leads them to formulate and act on discretionary judgments while performing administrative functions not otherwise contemplated as fiduciary. *See* H.R.Rep. No. 1280, 93d Cong., 2d Sess. 323 (1974) (Conf. Report) *reprinted in* [1974] U.S.Code Cong. & Admin.News 5038, 5103.

■ Against this background, the duties set forth in the 1971 Agreement and amplified in affidavits from key former TFA officials[10] establish TFA's status as a fiduciary in regard to certain activities. TFA adjudicated varied and substantial medical claims for reimbursement in which its judg-

---

7. The section provides as follows:

(21)(A) Except as otherwise provided in subparagraph (B), a person is a fiduciary with respect to a plan to the extent (i) he exercises any discretionary authority or discretionary control respecting management of such plan or exercises any authority or control respecting management or disposition of its assets, (ii) he renders investment advice for a fee or other compensation, direct or indirect, with respect to any moneys or other property of such plan, or has any authority or responsibility to do so, or (iii) he has any discretionary authority or discretionary responsibility in the administration of such plan....

8. *See* 29 U.S.C. § 1105(c)(1) (1976).

9. *See* Agreement and Declaration of Trust, Washington Area Carpenters' Pension and Retirement Trust Fund, Art. IV, Sec. 6(E), attached to defendants' motion to dismiss, filed May 29, 1979; Agreement and Declaration of Trust, Washington Area Carpenters' Welfare Fund, Art. IV, Sec. 6(c), filed March 24, 1980.

10. *See* Affidavits of Laurence Seibel and Joseph Maile, attached to plaintiffs' supplemental memorandum in opposition to defendants' motion to dismiss, Feb. 21, 1980.

ment as to what charges or amounts were "fair," "reasonable" or "customary" was in effect final. It made critical decisions concerning management of the dental treatment plan. It effectively supervised the establishment of recordkeeping systems used in administering the various benefit plans, and took some initiative regarding subsequent conversion to more sophisticated data processing equipment. In each instance, TFA apparently possessed broad latitude in making awards, setting priorities, and performing other administrative tasks. Further, TFA evidently selected the banks and types of accounts to be used for monies deposited in the name of the Trust Funds. Its officials often helped shape the agenda of trustee meetings.

In short, on this record TFA and its key officials exercised far more than ministerial powers. Their status as administrator may well qualify them automatically as fiduciaries in this instance. *See* 29 C.F.R. § 2509.-75-8 at D-3. The presence of TFA as a named insured on the fiduciary liability insurance policy purchased by the Trustees further supports such a position. Plaintiffs' claim that defendants may be sued as fiduciaries under ERISA survives for trial.[11] The connection, if any, between these fiduciary activities and TFA's alleged wrongdoing is, of course, a separate matter, to be resolved at trial.

### Punitive Damages

ERISA itself is silent with respect to whether or not punitive damages are available. Limited case law on the subject discloses no uniformity of judicial opinion. *Compare Wardle v. Central States, Southeast and Southwest Areas Pension Fund,* No. 77-149 (S.D.Ind.1979), *and Hurn v. Retirement Trust Fund,* 424

F.Supp. 80 (C.D.Cal.1976), *with Building Trades United Pension Trust Fund v. A.J.M. Construction Service, Inc.,* 271 BNA Pension Reporter D-3 (E.D.Wisc. 1979). Specific identification of other forms of relief[12] at first glance might appear to suggest a congressional intent to exclude punitive remedies. However, the scope of relief contemplated for violations of fiduciary duty belies such a conclusion. Under 29 U.S.C. § 1109(a) (1976), persons breaching fiduciary duty "shall be subject to such ... equitable or remedial relief as the court may deem appropriate." The legislative history indicates that enforcement provisions were designed to furnish "broad remedies for redressing or preventing violations of the Act.... [including] the full range of legal and equitable remedies available in both state and federal courts." H.R.Rep. No. 533, 93d Cong., 1st Sess. 17 (1973), *reprinted in* [1974] U.S.Code Cong. & Admin.News 4639, 4655. *See also* S.Rep. No. 127, 93d Cong., 1st Sess. 35 (1973), *reprinted in* [1974] U.S.Code Cong. & Admin.News 4838, 4871. Punitive damages are of course included among available legal remedies. In seeking a remedy to match the wrong committed by persons entrusted with fiduciary responsibility, there is no reason to preclude resort to such punitive relief should the fiduciary's conduct make it appropriate.

Availability of punitive relief is not affected by the policy considerations raised in the Supreme Court's recent denial of punitive damage recovery in a labor law setting. *International Bhd. of Elec. Workers v. Foust,* 442 U.S. 42, 99 S.Ct. 2121, 60 L.Ed.2d 698 (1979). *Foust* involved an alleged breach of the duty of fair representation under the Railway Labor Act, a statute which has as its overarching purpose

---

**11.** The evidence briefly summarized herein is applicable to TNG and the four remaining individuals (D'Amato, Doucette, Barrea, Gullapalli) as well as to TFA. TNG wholly controls TFA and the individuals are all TFA officers or members of its board of directors. On this record, each exercised enough discretionary authority in the administration or management of the plans to preclude a contrary finding based on undisputed facts. *See* Affidavits of Laurence

Seibel, Joseph Maile, William Costello, attached to plaintiffs' supplemental memorandum in opposition to defendants' motion to dismiss, Feb. 21, 1980.

**12.** *See, e.g.,* 29 U.S.C. §§ 1111(b), 1131 (criminal penalty), § 1132(a)(3) (injunctive or equitable relief), § 1109(a) and § 1111 (removal of fiduciary).

the promotion of collective bargaining and peaceful industrial relations, *id.* at 47, 99 S.Ct. at 2125. Embarking from this premise, the Court refused to sanction the availability of punitive damages, citing the harmful effect on the collective bargaining system should the financial stability of unions be impaired or their traditionally discretionary grievance process inhibited. *Id.* at 49–52, 99 S.Ct. at 2126–2127.

The principal objective of ERISA, however, is not preserving the proper balance and functioning of the collective bargaining system, but rather establishing and enforcing strict standards of conduct that will protect all those participating in employee benefit plans. The Act aims to safeguard the rights of workers against the abuses or excesses of institutions that exist to serve them. In fulfilling this unilateral protective function, ERISA is in important respects analogous to the Bill of Rights for union members promulgated as § 101 of the Landrum-Griffin Act, 29 U.S.C. § 411 (1976). Enforcement of these latter rights, "for such relief ... as may be appropriate," 29 U.S.C. § 412, has consistently been held to include the right to recover punitive damages under appropriate circumstances. *E.g., Morrissey v. National Maritime Union of America,* 544 F.2d 19, 24–25 (2d Cir.1976); *Cooke v. Orange Belt Dist. Council of Painters,* 529 F.2d 815, 820 (9th Cir.1976); *International Bhd. of Boilermakers v. Braswell,* 388 F.2d 193, 199–201 (5th Cir.), *cert. denied,* 391 U.S. 935, 88 S.Ct. 1848, 20 L.Ed.2d 854 (1968). *See generally International Bhd. of Elec. Workers v. Foust, supra,* 442 U.S. at 59, 99 S.Ct. at 2131 (Blackmun, J. concurring in result).

■ The conclusion that an award of punitive damages in an appropriate case is not foreclosed as a matter of congressional enactment does not dispose of defendants' claim for summary judgment in this in-

stance. Victims of a breach of contract may recover punitive damages only in certain exceptional, narrowly defined circumstances. *Brown v. Coates,* 253 F.2d 36 (D.C.Cir.1958); *Den v. Den,* 222 A.2d 647 (D.C.App.1966). The breach of duty, whether characterized as "merely" contractual or fiduciary, must be sufficiently willful, malicious, or outrageous to warrant assessment of such punitive relief. *Brown v. Coates, supra* at 40.

■ The Court has grave doubts, on the record thus far presented, that the requisite degree of malice or recklessness is present here. A failure to open mail or to reconcile bookkeeping entries, and the disorganized transfer of financial and administrative records, even if proven, do not appear to merit classification as extreme and outrageous conduct. However, the Court is unable to conclude that there are no material issues of fact in dispute. In view of the limited discovery that has taken place regarding these matters, and the allegations of willfulness and malice which on this limited record are not devoid of factual support, summary judgment cannot issue at this time.

*Personal Jurisdiction*

Three of the four remaining individual defendants, Barrea, D'Amato and Gullapalli,[13] argue that this court lacks jurisdiction over their persons.[14] All three defendants reside in New York; none has ever lived in the District of Columbia. According to their individual affidavits they have had no contacts with the District of Columbia other than in their business capacities as officers or directors of TFA, a District of Columbia corporation, or its corporate parent. On this basis, it is urged that the requisite "minimum contacts" are not established. *See Shaffer v. Heitner,* 433 U.S. 186, 97 S.Ct. 2569, 53 L.Ed.2d 683 (1977).

---

**13.** Defendant Doucette does not contest personal jurisdiction.

**14.** The applicable statutory provision is the District of Columbia long-arm statute, D.C.Code § 13–423(a)(1), (b), which permits a jurisdictional reach co-extensive with that sanctioned

by the due process clause of the Fifth and Fourteenth Amendments. *E.g., Berwyn Fuel, Inc. v. Hogan,* 399 A.2d 79 (D.C.App.1979); *Cohane v. Arpeja-California, Inc.,* 385 A.2d 153 (D.C.App.), *cert. denied,* 439 U.S. 980, 99 S.Ct. 567, 58 L.Ed.2d 651 (1978).

The Supreme Court's analysis in *Shaffer v. Heitner* does not extend nearly this far. In *Shaffer*, the corporate officers and shareholders contesting Delaware state court jurisdiction had no contacts with the forum state other than the statutory presence of their property. Moreover, this property bore no relation to the underlying cause of action which gave rise to the assertion of jurisdiction. In contrast, these three defendants regularly entered the District of Columbia to transact business on behalf of a corporation that is domiciled and conducts its principal activities here. Affidavits of record establish defendants' continuous participation in and control of day-to-day decisionmaking at TFA, either in person or over the telephone. It is clear that the instant cause of action arises from this same transaction of business. The plans are administered in the District of Columbia. Many if not all of the activities constituting the alleged breach of fiduciary duty occurred in the District of Columbia. The injuries suffered were suffered here. Moreover, under ERISA the alleged misconduct, if proven, compels a finding of personal liability against the corporate officials who also qualify as fiduciaries. 29 U.S.C. §§ 1002(21)(A), 1109 (1976).

Defendants purposefully availed themselves of the opportunity to transact business in this district. Whether they acted individually or as the alter egos or officer-agents of their corporations is of small moment for purposes of ERISA. They may be held personally liable in either case. Allowing these individuals to avoid the Court's *in personam* jurisdiction by creating a corporate veil would be both unjust and inconsistent with the broad construction previously given to relevant provisions of the long-arm statute. *See generally Mouzavires v. Baxter*, 434 A.2d 988 (D.C. App.1981); *Rose v. Silver*, 394 A.2d 1368 (D.C.App.1978). Under all these circumstances, the conclusion that defendants are found here does not offend "traditional notions of fair play and substantial justice." *International Shoe Co. v. Washington*, 326 U.S. 310, 316, 66 S.Ct. 154, 158, 90 L.Ed. 95 (1945). Process was properly served on the individual defendants, pursuant to 29 U.S.C. § 1132(e)(2) (1976).

Finally, the motion to dismiss count three of the complaint is premature. Ultimate disposition of this matter must await further discovery concerning financial dealings between the two defendant corporations.

### Aetna-TFA Insurance Coverage

Aetna, a third-party defendant in this action, issued a fiduciary responsibility insurance policy covering the trustees and any other person properly designated as an "insured" pursuant to Article III of the contract. TFA was so designated for the 12-month policy period effective January 1, 1978, but was deleted for the subsequent period from January 1, 1979, to January 1, 1980. The policy document itself unequivocally limits coverage to claims first made during the policy period. It is not disputed that the trustees made no claim against TFA until after January 1, 1979, at which time TFA was no longer a named insured. Aetna contends, on the basis of these facts, that it is not obligated to defend, or indemnify TFA, for the latter's "wrongful" acts.

Reading the policy in the light most favorable to the insured, there can be little doubt that its language confirms Aetna's position. TFA's contention that it "reasonably expected" coverage against claims made some four months after it had been removed as a named insured is utterly without merit. The contract is unambiguously identified as a "claims made" policy. Formerly insured parties do not retain protection by virtue of their ancient status. As of January 1, 1979, TFA was not a party to the contract. The Court will not create ambiguity where none exists. The plain meaning of the contract language must be adopted. *Medical Services of the Dist. of Columbia v. Llewellyn*, 208 A.2d 734, 736 (D.C.App.1965); *Rotwein v. General Accident Group*, 103 N.J.Super. 406, 247 A.2d 370 (1968).

TFA further asserts that enforcement of the insurance contract as construed by Aet-

na would violate public policy by imposing an unreasonable restraint of trade. This assertion lacks adequate support in the record. TFA was not unduly restrained in its efforts to secure continuing protection for any wrongful acts it may have committed prior to January 1, 1979. At the end of its 1978 policy term, TFA could have either negotiated an extension of its coverage with Aetna or purchased from another insurer a policy with retroactive coverage. There is no persuasive evidence that such options were unavailable to TFA, or that defendant was otherwise unreasonably restrained. Indeed, the record is barren of indications that TFA even sought additional protection. TFA evidently made a business decision not to extend coverage, under Article X of the Aetna policy or through another insurer. This decision, while perhaps imprudent, was its own. Considerations of public policy simply do not arise.

### Federal-TNG Insurance Coverage

Federal, insurer for the other corporate defendant, also hopes to establish that the actions complained of do not fall within the scope of the coverage it extended. Material provisions of the contractual liability insurance policy protect TNG against claims for damages "arising out of negligent act, error or omission of the insured in the processing of data or records of others in the insured's business as a data processor." This coverage does not extend "to any dishonest, fraudulent, criminal or malicious act, error or omission." Because the acts complained of are alleged to involve deliberately malicious or reckless conduct, and negligence is nowhere expressly charged, Federal argues that it is not obligated to defend the action against TNG. The absence of allegations in the complaint referencing errors or omissions in electronic data processing is urged as an additional ground for denying coverage.

■ Whether the applicable law is that of New York or the District of Columbia,[15] it is settled that an insurance company's

duty to defend an action against its insured is determined by reference to the allegations of the complaint. *Donnelly v. Transportation Insurance Co.*, 589 F.2d 761 (4th Cir.1978); *S. Freedman & Sons, Inc. v. Hartford Fire Insurance Co.*, 396 A.2d 195 (D.C.App.1978); *Boyle v. National Casualty Co.*, 84 A.2d 614 (D.C.App.1951); *McGroarty v. Great American Insurance Co.*, 36 N.Y.2d 358, 368 N.Y.S.2d 485, 329 N.E.2d 172 (1975); *International Paper Co. v. Continental Casualty Co.*, 35 N.Y.2d 322, 361 N.Y.S.2d 873, 320 N.E.2d 619 (1974). If these allegations include facts upon which a covered cause of action might be based, the insurer is obligated to defend. *E.g., Donnelly, supra,* 589 F.2d at 767; *McGroarty, supra,* 368 N.Y.S.2d at 491, 329 N.E.2d at 176. In interpreting the allegations of the complaint, which are neither drafted by the insured nor advanced in contemplation of an insurer's role, excessively literal or rigid construction is to be avoided. An insurer's obligation to defend is of course not tantamount to a duty to indemnify. But so long as facts are alleged which could form a basis for recovery within the coverage of the policy, the duty to defend exists.

The main complaint in this action pleads facts that reasonably can be construed to sound in negligence. Although allegations abound of willful or malicious conduct, there also are facts effectively charging a lack of due care in recordkeeping, claims processing and other matters. *See, e.g.,* paragraphs 20, 21, 28, 29. Indeed, paragraph 29 specifically identifies a lack of "care, prudence and diligence" in the discharge of fiduciary and contractual duties. Further, absent proof of malice or its equivalent, the acts complained of could still result in a verdict of negligence at trial.

■ Errors and omissions in electronic data processing also are implicated in the allegations of the complaint. The failure to mention "computers" in the complaint is

---

**15.** The contract was delivered to TNG in New York and payment was made there. The principal situs of the insured risk, however, was Washington, D.C.

not dispositive in this regard. Recordkeeping and claims processing for the plans were handled in part by computer during material time periods. There is evidence linking tasks performed by computer to at least some of the acts complained of in areas such as accurate recordkeeping, bank statement reconciliations, and orderly transition to the new administrator. At a minimum, the errors or omissions complained of, coupled with reliance on computers to perform tasks material thereto, establish disputed issues of fact. Summary judgment is therefore inappropriate. Indemnification is a wholly separate matter, to be resolved by the trier-of-fact.

To summarize, defendants' motion to dismiss or for summary judgment is denied in its entirety. The Court has subject matter jurisdiction over count one. Recovery of punitive damages is not foreclosed as a matter of law. The four remaining individual defendants have transacted sufficient business in the District of Columbia to be "found" here. Defendants Pero and Fiumefreddo are voluntarily dismissed. Third-party defendant Aetna's motion for summary judgment is granted; Aetna is dismissed from the case. Third-party defendant Federal's motion for summary judgment is denied. Federal remains in the case as an insurer, with an obligation to defend TNG. An appropriate order is attached.

The above case is set down for a status conference in Courtroom No. 6 on May 14, 1980, at 10:00 a.m., to set the scope and limits of subsequent discovery, and to arrange a discovery schedule as well as dates for pretrial and trial.