FLORIDA HEALTH SCIENCES CEN-
TER, INC., operating TAMPA General
Hospital, as assignee of the Hillsbor-
ough County Hospital Authority,
Hillsborough County, Florida and
Wayne Turco, as personal representa-
tive of the Estate of Diana Smith,
deceased, Plaintiffs,

v.

HUMANA MEDICAL PLAN, INC., as
Assignee of PCA Health Plans of
Florida, Inc. and Walgreen Co., Defen-
dants.

No. 899CV94T17EAJ.

United States District Court,
M.D. Florida.
Tampa Division.

Oct. 23, 2001.

Robert Alexander Vigh, Solomon & Ginsberg, P.A., Tampa, FL, for Florida Health Sciences Center, Inc., Wayne Turco.

Ralph G. Patino, Patino & Associates, PA, Coral Gables, FL, for Humana Med. Plan, Inc.

Michael P. Murphy, Dickinson and Gibbons, P.A., Sarasota, FL, William G. Beatty, Johnson & Bell, Ltd., Chicago, IL, for Walgreen Co.

Roger Portela, Davie, FL, pro se.

## ORDER ON MOTIONS FOR SUMMARY JUDGMENT

KOVACHEVICH, District Judge.

This cause comes before the Court on the following motions and responses:

Dkt. 85 Motion for Summary Judgment (Defendant Humana)

Dkt. 86 Motion for Summary Judgment (Plaintiffs)

Dkt. 92 Response (Plaintiffs)

Dkt. 97 Response (Defendant Humana)

Dkt. 98 Response (Defendant Walgreen Co.)

### STANDARD OF REVIEW

This circuit has long held that summary judgment is appropriate only when the moving party has sustained its burden of showing the absence of a genuine issue as to any material fact when all the evidence is viewed in the light most favorable to the non-moving party. See *Sweat v. Miller Brewing Co.*, 708 F.2d 655 (11th Cir.1983). The moving party bears the initial burden of demonstrating for the court the basis for its motion for summary judgment by identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions which that party believes show an absence of any genuine issue of material fact. See *Hairston v. Gainesville Sun Publishing Co.*, 9 F.3d 913, 918 (11th Cir.1993). Factual disputes preclude summary judgment.

In *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986), the United States Supreme Court held:

In our view, the plain language of [Fed. R.Civ.P.] 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to establish the existence of an element essential to that party's case, and on which that party will bear burden of proof at trial.

A dispute is genuine, and summary judgment is inappropriate, if a reasonable jury could return a verdict for the non-moving party. See *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). Once the moving party has satisfied its burden, the non-moving party must:

> ...go beyond the pleadings and by his or her own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial.

See *Celotex*, 477 U.S. at 324, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

### STATEMENT OF FACTS AND PROCEDURAL HISTORY

Plaintiffs, Florida Health Sciences Center (hereafter "Hospital"), and the estate of the deceased Diana Smith (hereafter "Smith's estate") seek to recover costs in the amount of $150,327.36 from Defendants, Humana Healthcare Plan, Inc. (hereafter "Humana"), as assignee of PCA Health Plans of Florida (hereafter "PCA") and Walgreen Co. (hereafter "Walgreen"), for services provided by the Hospital to Smith. (Dkt.52).

Co–Defendants Walgreen and PCA entered into a Group Master Application, whereby PCA agreed to provide or arrange health services for eligible employees of Walgreen who elected to enroll in the PCA plan. Ms. Smith, now deceased, elected to enroll in the PCA HMO plan made available to her as a Walgreen employee. (Dkt.52).

On November 5, 1996, Smith was admitted into the hospital and remained there until November 15, 1996. (Dkt.52). From there, Smith was transferred to a skilled nursing facility, where the hospital provided continued medical care and treatment until on March 11, 1997. (Dkt.52). Smith then returned to the hospital and remained there until her discharge on March 25, 1997. (Dkt.52).

In January of 1997, Walgreen requested that Smith's employment status be changed to "terminated" retroactively to November 17, 1996, for purposes of insurance eligibility and PCA carried out the change. (Dkt.52). Smith received the notification of termination, but according to Smith, this disseminated information was inaccurate. (Dkt.52). The plaintiffs contend that at all times relevant to this action Smith was an employee on an "approved leave of absence" and therefore was eligible for insurance coverage under the PCA HMO plan. (Dkt.52).

On February 26, 1997, Walgreen approved Smith's leave of absence status retroactive to November 17, 1996, and, accordingly notified Smith of her eligibility for coverage. (Dkt.52). In March of 1997, Walgreen requested reinstatement of Smith's PCA HMO policy retroactively to November 17, 1996, in order that there be no lapse in coverage. PCA refused to reinstate the HMO policy retroactively to November 17, 1996, but, instead, reinstated Smith's coverage as of April 1, 1997. (Dkt.52). This, however, was 5 days after Smith's release from the hospital. (Dkt.52).

After failed attempts to get Smith reinstated and to get the benefits paid under the PCA HMO plan, Hospital proceeded under the terms of its contract with PCA and requested that the matter be submitted to binding arbitration. (Dkt.52). Prior to the hearing, the parties agreed to attempt mediation on the condition that Walgreen participate. (Dkt.52). Walgreen refused to participate in such mediation. As a result, Hospital and PCA agreed to abandon mediation and arbitration with the understanding that the Plaintiffs were going to file suit. (Dkt.52). The Plaintiffs did that in 1999. (Dkt.1,52).

## DISCUSSION

First, this Court will address the exhaustion of administrative remedies issue, as the resolution of said issue determines this Court's ability to consider any additional claims.

### I. Exhaustion of Administrative Remedies

ERISA itself does not mandate the exhaustion of administrative remedies as a condition precedent to filing an action for violations thereof; however, courts have generally required claimants to exhaust their administrative remedies prior to instituting suit in federal court under ERISA. *See Kross v. Western Elec.*, 701 F.2d 1238 (7th Cir.1983).

It is noted that there is a split among the federal circuits with respect to whether the doctrine of exhaustion of administrative remedies applies to claims filed under ERISA. *See King v. James River–Pepperell, Inc.*, 592 F.Supp. 54 (D.Mass.1984); *Kross v. Western Elec. Co., Inc.*, 701 F.2d 1238 (7th Cir.1983); *Treadwell v. John Hancock Mut. Life Ins. Co.*, 666 F.Supp. 278 (D.Mass.1987); *Held v. Mfr. Hanover Leasing Corp.*, 912 F.2d 1197 (10th Cir. 1990); *Jess v. Pandick, Inc.*, 699 F.Supp. 698 (N.D.Ill.1988); and *Lawford v. New York Life Ins. Co.*, 739 F.Supp. 906 (S.D.N.Y.1990).

The Eleventh Circuit, however, has specifically held that exhaustion of administrative remedies is a prerequisite to instituting an ERISA action in a federal district court. *See Mason v. Continental Group, Inc.*, 763 F.2d 1219 (11th Cir.1985), *cert. denied*, 474 U.S. 1087, 106 S.Ct. 863, 88 L.Ed.2d 902 (1986). The exhaustion requirement applies to breach of contract claims and to actions premised on alleged statutory violations. *See Springer v. Wal–Mart Associates' Group Health Plan*, 908 F.2d 897, 899 (11th Cir.1990). There are, however, recognized exceptions to the exhaustion requirement; for example, it has been held that exhaustion is not required if the administrative remedy is futile or inadequate. *See Curry v. Contract Fabricators, Inc. Profit Sharing Plan*, 891 F.2d 842, 846 (11th Cir.1990).

■ Both Defendants argue, in their respective responses, that the Plaintiffs did not exhaust administrative remedies because Plaintiffs filed suit without filing a complaint in the form of a "grievance". (Dkt.97, 98). However, Plaintiff argues in its Motion for Summary Judgment that by submitting written and oral requests for reinstatement and by submitting requests to have benefits paid, that it accomplished the equivalent of the grievance process. Plaintiffs also assert that by attempting to proceed with binding arbitration and mediation, which was refused by Walgreen, and abandoned by Humana, that both Defendants have waived this affirmative defense. (Dkt.86).

In light of the facts of this case, the Court finds that exhaustion requirement is futile or implausible because the depositions of PCA employees provide that had the same requests submitted been titled "grievance", they too would have been denied. Defendant Walgreen's refusal to participate in binding arbitration or mediation further demonstrates that attempts to settle this matter would have been futile. Additionally, Defendant Humana understood that in abandoning arbitration proceedings, as provided for in the contract between PCA and Hospital, Plaintiffs would be forced to file suit.

Therefore, this Court finds that Plaintiffs sufficiently satisfied the requirements for pleading exhaustion under ERISA and agrees that any pursuit of administrative remedies would have been futile or inadequate.

## II. Plan Administration

Plaintiffs' Third Amended Complaint alleges that Smith was an employee of Walgreen at all times relevant to this action. (Dkt.52). It is undisputed that Smith was enrolled in the PCA HMO plan, which was made available to her as an employee of Walgreen. It is also undisputed that while PCA determined the claims process, Walgreen notified PCA of the employees who were eligible to enroll in the plan. (Dkt.76,77). Plaintiffs and Humana assert that Walgreen failed to provide accurate information relating to Smith's eligibility for enrollment and coverage. (Dkt.52, 100). As a result of the information provided, PCA terminated coverage retroactively. PCA contends that Plaintiffs have not proven that PCA breached any duty when it terminated Smith's coverage at Walgreen's request. (Dkt.97). PCA further contends that Plaintiffs have offered no evidence that PCA had a duty to reinstate Smith at Walgreen's request. (Dkt.97).

### A. Defendants Fiduciary Status

■ This Court must first entertain the question of whether Walgreen and PCA are fiduciaries of the plan under ERISA. Walgreen asserts that it is not a fiduciary of the plan, as it did not have any discretionary control over the payment of benefits. (Dkt.98). However, this Court finds Walgreen to be a fiduciary to the extent it retained discretionary control over an employee's eligibility to participate in the plan.

The statute provides that an ERISA "fiduciary" may include not only the persons named as fiduciaries by a benefit plan, but also anyone else who exercises discretionary control or authority over the plan's management, administration, or assets. See, 29 U.S.C. § § 1102(a), 1002(21)(A). See also, *Mertens v. Hewitt Assoc.*, 508 U.S. 248, 251, 113 S.Ct. 2063, 2066, 124 L.Ed.2d 161 (1993). Congress was concerned with establishing minimum standards to safeguard the equitable character and financial soundness of employee benefit plans. See *Eaton v. D'Amato*, 581 F.Supp. 743, 747 (D.D.C.1980) (citing H.R.Rep. No. 1280, 93d Cong., 20 Sess. 323 (1974) (Conf.Report) reprinted in [1974] U.S. Code Cong. & Admin. News 5038, 5103). The legislative history suggests that Congress fully intended the definition of "fiduciary" to encompass anyone who acts on discretionary judgment while performing administrative functions. See *Id.* Additionally, ERISA is to be construed liberally to safeguard the interests of the fund and to preserve the integrity of the fund assets. See, *Gilliam v. Edwards*, 492 F.Supp. 1255 (D.N.J.1980). See also, Wesley Kobylak, Annotation, *Who is "Fiduciary" Within Meaning of § 3(21) of Employee Retirement Income Security Act of 1974 (29 U.S.C.S. § 1002 (21)), 67 A.L.R. FED.* 186, 191 (1984).

Courts usually look at a party's conduct to determine what particular actions constitute binding discretionary authority for purposes of *29 U.S.C. § 1002* (21) of ERISA. *Id.* Therefore, the Court may be compelled to raise Defendant Walgreen's status to that of fiduciary to the extent that fiduciary is permitted to exercise discretion. See generally, *Eaton v. D'Amato*, 581 F.Supp. 743 (D.D.C.1980). See also, *67 A.L.R. FED. at 194.* To examine Walgreen's conduct, the Court must construe the Plaintiff's complaint in light most favorable to the Plaintiff and accept the truthfulness of well-pleaded facts. See, *Warth*, 422 U.S. at 501, 95 S.Ct. 2197.

In this case, Plaintiffs factually allege that Walgreen undertook all responsibility for making discretionary decisions regarding eligibility for enrollment under the PCA HMO plan, and, that Walgreen did so without consulting PCA. (Dkt.52). Ac-

cording to Plaintiffs' allegations, Walgreen was acting as a fiduciary, within the meaning of ERISA, with respect to its activities of determining coverage eligibility and making payments to PCA for employee enrollment. *See, Blue Cross and Blue Shield of Alabama v. Weitz,* 913 F.2d 1544, 1545 (11th Cir.1990). *See also, Blue Cross and Blue Shield of Alabama v. Sanders,* 138 F.3d 1347, 1352 (11th Cir.1998). While Walgreen asserts that it cannot be a fiduciary, as it had no control over the payment of benefits, the truth is that by rendering an employee ineligible for coverage Walgreen automatically ensured that that employee was ineligible for benefits. Therefore, this Court finds that Walgreen acted with sufficient discretionary judgment when notifying PCA of an employee's eligibility or ineligibility for coverage under the plan and is a fiduciary under ERISA. *See Hamilton v. Allen–Bradley Co., Inc.,* 244 F.3d 819 (11th Cir.2001).

■ Humana doesn't seem to contest that PCA was a fiduciary of the plan. The facts necessary to classify it as a fiduciary of the plan have been well established. Therefore, because, as stated above, PCA maintained discretionary authority under the plan with regard to plan administration and of the payment of benefits, it necessarily follows that PCA is also a fiduciary under ERISA.

Therefore, for the reasons stated above, the Court finds sufficient decisional control maintained by both Walgreen and PCA to render them both fiduciaries and plan administrators under the plan.

**B. Breach of Fiduciary Duty**

■ Now that the issue of whether Walgreen and PCA are fiduciaries of the plan has been resolved, the remaining issue with regard to the plan becomes whether any fiduciary duty was breached. The facts indicate that a claim for breach of fiduciary duty exists, the basis for that claim being failure to disclose accurate information. Therefore, the issue is properly before the Court and it will entertain Plaintiffs' claims on the merits. Because the Plaintiffs allege breach of fiduciary duty, and argue this point in their Motion for Summary Judgment, the Court must, in deciding this issue, construe the factual allegations in a light most favorable to the Defendants and accept the truthfulness of well-pleaded facts. *See, Warth,* 422 U.S. at 501, 95 S.Ct. 2197.

Whether their respective fiduciary duties have been breached is an issue that is ripe for trial because it is contested whether Walgreen actually breached its duty in either classifying Smith as "terminated" or its subsequent request that PCA classify Smith as "terminated". In its response, Walgreen maintains that Smith failed to maintain the requisite contact with Walgreen in order to maintain her approved leave of absence status. (Dkt.98). The Affidavit of Carol Spitz supports their contention. (Dkt.98). Walgreen provides that Smith, or someone on her behalf, was required to advise Walgreen, on an ongoing basis, regarding Smith's medical condition once she had been placed on disability leave, and, they were to provide Walgreen with periodic statements from Smith's physician concerning the medical reason for continuing Smith's disability leave, as well as the expected duration of her illness. (Dkt.98). Walgreen asserts that failure to provide such information as required, triggered Smith's termination and a subsequent notification by Walgreen to PCA of Smith's loss of eligibility for continued coverage. (Dkt. 98 Affidavit of Carol Spitz paragraphs 9–15). Walgreen states that after a tardy receipt of Smith's medical information, it then requested retroactive reinstatement of Smith in PCA's HMO plan, which PCA refused to grant. (Dkt.98).

PCA contests Plaintiffs' assertion that PCA breached any duty in implementing the status change as requested by Walgreen. (Dkt.85,97). PCA also asserts that Plaintiffs have failed to establish that PCA had a duty to reinstate Smith retroactively at Walgreen's request. While PCA maintains that only Walgreen had the discretionary authority to determine eligibility for the plan, PCA, in fact, disregarded Walgreen's discretionary decision for Smith's eligibility when PCA decided on its own that Smith was ineligible for reinstatement.

Since there is factual dispute as to the accuracy of the information provided by Walgreen to PCA, the Court must view the facts in a light most favorable to the Defendant and must accept the truthfulness and accuracy of those facts. In doing so, the Court finds, for the reasons stated above, that at this time the Plaintiffs' Motion for Summary Judgment as to the breach of fiduciary duty claim must be denied.

### III. ERISA Preemption

The Defendants take the position that Plaintiffs' claims are barred by ERISA. The Plaintiffs assert that the claims are not barred under ERISA, and, also, that Humana has waived this as an affirmative defense since Humana raises it as a defense for the first time on summary judgment. (Dkt.86,92). The issue before the Court is whether ERISA preemption is jurisdictional, and thus may be raised at any point in litigation, or whether it is an affirmative defense, waivable if not pleaded timely. The Court shall first determine whether ERISA preemption is waivable and then will determine whether the Defendants have waived the ERISA preemption as a defense.

### A. Whether ERISA is an Affirmative Defense Which Must be Timely Pleaded

■ The Supreme Court analyzed at length the intent behind ERISA's preemption provision in *Pilot Life Ins. v. Deaux*, 481 U.S. 41, 44–46, 52–57, 107 S.Ct. 1549, 95 L.Ed.2d 39 (1987). The Court focused on the civil enforcement provision found at 29 U.S.C. § 1132(a), under which a plan participant may file suit for benefits due under an ERISA plan. The Court decided that Congress intended to create an "exclusive federal remedy, with a preemptive force... modeled after § 301 of the Labor Management Relations Act ("LMRA")." *Pilot Life*, 481 U.S. *at* 52, 107 S.Ct. 1549. Accordingly, the Court held that ERISA preempts all state law causes of action for benefits due under an ERISA plan. *Id.* at 57, 107 S.Ct. 1549. Pilot Life did not, however, address whether ERISA preemption was a jurisdictional matter or a waivable defense, but the Court advised courts that when deciding the scope of ERISA plans, they should seek guidance from preemption decisions arising from the Labor Management Relations Act. *Id.* at 54–55, 107 S.Ct. 1549. The First Circuit, as Plaintiffs have cited, reasoned that LMRA preemption is waivable. *Sweeney v. Westvaco Co.*, 926 F.2d 29 (1st Cir.), *cert. denied*, 502 U.S. 899, 112 S.Ct. 274, 116 L.Ed.2d 226 (1991). In Applying Judge (now Justice) Breyer's opinion in Sweeney to the instructions given in *Pilot*, the First Circuit concluded that ERISA preemption is appropriately waivable. *See Wolf v. Reliance Standard Life Insurance Co.*, 71 F.3d 444 (1st Cir. 1995). Accordingly, this Court finds that a failure to timely plead ERISA preemption as an affirmative defense constitutes a waiver of the application of that defense.

### B. Amendment of the Pleadings

■ Having already concluded that ERISA preemption is an affirmative de-

fense that must be timely plead to avoid waiver, the Court must now determine whether it will grant Defendant leave to amend the pleadings.

Federal Rule of Civil Procedure 8(c) requires that a responsive pleading set forth certain enumerated affirmative defenses as well as any other matter constituting an avoidance or affirmative defense. *Fed. R.Civ.P. 8(c).*

Whether or not to grant leave to amend the pleadings is within the discretion of the trial court. Failure to plead an affirmative defense generally results in the waiver of the defense. An affirmative defense must be pleaded in the answer in order to give the opposing party sufficient notice of the defense and the ability to gather proper evidence and develop arguments to refute the defense.

In this case, the Plaintiffs have amended the complaint four times. Consequently, Humana has filed two motions to dismiss and four answers. Humana has never raised ERISA preemption in any of those pleadings. Humana has never filed a motion with this Court seeking to amend its pleadings to raise this issue prior to the filing of this dispositive motion. Plaintiffs cite multiple cases to support their proposition that the ERISA preemption is in fact waivable. *See, Wolf v. Reliance Standard Life,* 71 F.3d 444 (1st Cir.1995); *Dueringer v. General American Life Ins. Co.,* 842 F.2d 127 (5th Cir.1988); *Gilchrist v. Jim Slemons Imports, Inc.,* 803 F.2d 1488 (9th Cir.1986). Humana has not cited any case authority that would permit it to raise preemption at this late date in the manner in which it is seeking to do. (Humana cites *Howard v. Parisian, Inc.,* 807 F.2d 1560 (11th Cir. 1987), but the facts of *Howard* are distinguishable from the instant case because in *Howard,* the defendant raised preemption in its first response to the complaint). However, Humana argues that it provided sufficient notice to Plaintiffs through maintaining, as an affirmative defense, that Plaintiffs have failed to state a cause of action. Humana argues that had Plaintiffs sought to clarify the affirmative defense, that the Plaintiffs would have discovered Humana's reliance upon ERISA as the basis for the defense. (Dkt.97).

This Court, while mindful that the Plaintiffs were aware the plan in question was covered under ERISA, cannot ignore persuasive Federal law that holds that failure to plead constitutes waiver. As a result of Humana's failure to raise preemption, which has been available to Humana from the initiation of this lawsuit, the Court finds that Humana has waived the assertion of this defense. Accordingly, it is

**ORDERED** that the Cross–Motions for Summary Judgment (Dkts.85,86) be **denied.**