John J. DONNELLY, Appellant,

v.

TRANSPORTATION INSURANCE COMPANY, Continental Casualty Company, Appellees.

No. 77-2164.

United States Court of Appeals, Fourth Circuit.

Argued April 6, 1978.

Decided Dec. 22, 1978.

As Amended on Denial of Rehearing Jan. 30, 1979.

Michael McGettigan, Alexandria, Va. (George F. West, Jr., Murphy, McGettigan, McNally & West, Alexandria, Va., on brief), for appellant.

Randell Hunt Norton, Washington, D. C. (James C. Gregg, Washington, D. C., on brief), for appellees.

Before WINTER, BUTZNER and WIDENER, Circuit Judges.

WIDENER, Circuit Judge:

John J. Donnelly, the appellant, sued the two appellee insurance companies for their refusal to defend him under a series of professional liability insurance policies. Jurisdiction is based upon 28 U.S.C. § 1332 (diversity of citizenship). Donnelly claimed as damages the costs of his defense and losses to him occasioned by settlement of a suit against him. The district court, sitting without a jury, found that the insurance companies did not owe Donnelly the duty of

a defense.[1] Thus, the court never reached the question as to the measure of Donnelly's damages. It is from the order of the district court entering judgment for the defendants that this appeal is taken.

Pertinent provisions of the policies involved are the same and are as follows:

"The Company . . . Agrees . . .

"To pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages because of any act or omission of the insured . . . and arising out of the performance of professional services for others in the insured's capacity as a lawyer. . . .

 *    *    *    *    *    *

"With respect to such insurance as is afforded by this policy, the company shall: (a) defend any suit against the insured alleging such act or omission and seeking damages which are payable under the terms of this policy, even if any of the allegations of the suit are groundless, false or fraudulent; but the company may make such investigation and, with the written consent of the insured, such settlement of any claim or suit as it deems expedient;

 *    *    *    *    *    *

"This policy does not apply:
(a) to any dishonest, fraudulent, criminal or malicious act or omission of any insured, partner or employee;"

Beginning in 1970, Donnelly was employed by Catharine W. Kunz as her attorney. The principal nature of the legal services to be rendered by Donnelly to Mrs. Kunz was to help her with problems arising out of the administration of the estate of her deceased husband and to help her in the planning of her own estate. As of August 19, 1971, Donnelly claims to have performed seventeen items of legal service for Mrs. Kunz, including seven trips to California totaling 28 days. For this he claims that he earned a fee of $30,000.00 plus $3,031.86 as reimbursement for expenses, for a total of $33,031.86. He acknowledges receipt of $29,882.47, leaving $3,149.39 which he claims was still owing him on August 19, 1971.

Early in October 1971, Donnelly received a letter dated October 1, 1971 from an attorney representing Mrs. Kunz demanding that specified securities be returned and that an accounting otherwise be made.[2] On

1. Prior to the trial, the parties had filed counter motions for summary judgment. Judge Lewis denied the insurance companies' motions and allowed Donnelly's motion for a partial summary judgment. In so doing, he found that there was a duty to defend. He set the case for hearing as to the measure of Donnelly's damages. The case later came before Judge Clarke, who held that he was not bound by Judge Lewis' prior holding, and, after trial, found for the defendants.

2. Dear Mr. Donnelly:
   Our firm has been retained by Mrs. Catherine [sic] Wood Kunz and members of her family. We have reviewed her financial affairs since the death of her husband, with particular reference to the period during which you held yourself out as both her attorney and agent.
   It appears from a review of transactions between you and Mrs. Kunz that you personally obtained and put in your possession $20,000 given to you by Mrs. Kunz for transmittal to her sister, Mrs. Margaret Clogston; that you signed a note for that sum; that you obtained the note from Mrs. Kunz's possessions without her knowledge or consent; that you never returned that note but rather replaced it with a note signed by Mrs. Clogston and bearing restrictions not on the original note.
   You further received the following shares of stock belonging to Mrs. Kunz:
   100 Kentucky Utilities Co.
   200 El Paso Electric Co.
   120 Bankamerica Realty Inv. SBI
   200 Stokely-Van Camp Inc.
   1,200 Bankamerica Realty Inv. 6.75% 7-15-90
   100 Pacific Gas & Electric 9.28 PFDJ
   It is my understanding that these shares were sold through the account of Margaret Clogston at Ferris and Company in Washington, D. C. These sales took place without the consent of Mrs. Kunz. A total of $17,474.47 was realized from these sales which is now in your possession.
   On November 13, 1970, you received a payment on account from Mrs. Kunz in the amount of $10,000 and an additional deposit for expenses in the amount of $2,500. In a bill rendered August 19, 1971, you listed services allegedly rendered to Mrs. Kunz up to that date. It is my understanding that most, if not

June 5, 1972, Mrs. Kunz filed suit in the United States District Court for the District of Columbia against Donnelly and Ferris & Company, Incorporated, the brokerage firm through which the stock shares in question were negotiated. On November 21, 1973, an amended complaint was filed which substituted as plaintiff Laureen W. MacNeil, representative of the estate of Catharine W. Kunz, and added two additional causes of action.

The general nature of the amended complaint as understood by the district court is shown by the following quotation from the memorandum opinion and order of the district court: ". . . The amended complaint in that suit sought recovery against Mr. Donnelly on three grounds:

"(1) Unauthorized sale by Mr. Donnelly of securities owned by Mrs. Kunz worth about $17,500;

"(2) Receipt by Mr. Donnelly through misrepresentation of $20,000.00 intended as a loan from Mrs. Kunz to her sister, Mrs. Margaret Clogston; and

"(3) Improper retention of $12,500 paid by Mrs. Kunz to Mr. Donnelly as fees.

The amended complaint sought punitive damages in addition to the amounts listed above. The basis of claim (1) was that Mr. Donnelly had sold securities owned by Mrs. Kunz in order to collect a fee billed to Mrs. Kunz, which fee she claimed had not been earned. Claim (2) involved Mr. Donnelly's use of funds loaned from Mrs. Kunz to her sister. Claim (3), as claim (1), related to

Mrs. Kunz' assertion that Mr. Donnelly had not earned money which he claimed as an attorney's fee." The punitive damages which were sought were on claims (1) and (2) only, and the complaint did not disclose that claim (1) arose with respect to attorney's fees.

There is no issue but that Donnelly gave CNA notice of the letter of October 1, 1971, making demand on behalf of Mrs. Kunz, and of the filing of the original suit on June 5, 1972, and of the filing of the amended complaint on November 21, 1973, with requests, on each occasion, that CNA defend Donnelly under its policy. An agreement to defend claim (2) under reservation of right was executed. Later, however, on January 22, 1974, CNA denied coverage either for defense or liability.

Donnelly personally engaged counsel to defend him in the MacNeil action against him. The case was never tried on the merits but was eventually settled in July 1976 by a consent judgment in connection with a divorce proceeding against Donnelly by his wife, Josephine Donnelly.[3]

The parties agree that the law of the District of Columbia applies and that if the insurance companies owed the duty to defend one claim in the suit against Donnelly, they owed the duty to defend all of them. With respect to the law of the District of Columbia, we think we should follow *Boyle v. National Casualty Co.*, 84 A.2d 614 (Mun. Ct.App.D.C.1951), so far as it may apply to this case.

all, of the alleged services, including a number of transcontinental trips, were never requested by Mrs. Kunz. Such trips were made on your own initiative and without authority.

During your representation of Mrs. Kunz, you retained local California counsel under a fee arrangement not justified by the services to be rendered by such counsel. Fees in the amount of $5,000 were paid to the California attorney.

On behalf of Mrs. Kunz, we hereby demand that you return her assets now in your possession in the amount of $49,974.47, representing the loan funds, the proceeds of the sale without authority of Mrs. Kunz's stock, and the unearned fees and expenses collected on account. We further demand that you reimburse Mrs. Kunz for the $5,000 paid to Mr. Traumueller in

excess of your authority. Unless these sums are promptly refunded, we will be forced to take further action to enforce Mrs. Kunz's rights. There are many other questionable aspects of the relationship between you and Mrs. Kunz, but we believe that Mrs. Kunz's welfare can best be achieved by protecting her financial interests and it is to this area that we are, therefore, addressing ourselves.

3. The judgment provided that ". . . Neither Laureen W. MacNeil in her representative capacity and individually . . . nor John J. Donnelly shall claim against the other through suit or otherwise any amounts as the result of any transactions involving the affairs of Catharine W. Kunz or Margaret E. Clogston or their estates . . ."

Some generalities may be noted as background to the specific legal issues at hand. Liability insurance frequently involves two obligations on the part of an insurance company: the duty to defend the assured, and the duty to pay a judgment against the assured or to indemnify him if he has been forced to pay one. Generally speaking, these two duties are similar. Thus, there is a body of authority that an insurance company need not defend a case against an assured if the charge against him was entirely foreign to the risk insured against. Such a case is *Boyle*. In that case, a restaurant owner's risk insured against included personal injury "caused by accident," which "accident" included "assault and battery" "unless committed by or at the direction of the insured." The duty to defend was stated as " 'as respects insurance afforded by this policy' the insurance company should defend 'any suit against the insured alleging such loss and seeking damages on account thereof, even if such suit is groundless, false, or fraudulent.' " A certain Pine was injured in the restaurant and sued the insured for assault and battery committed by the insured personally. The insured successfully defended the suit and sued his insurance company for his attorneys' fees and costs in defending the claim.

The court held that the obligation to defend is measured by the allegations of the complaint, so that if a covered cause of action is alleged, a defense is owed, while if a liability is alleged which is not within the coverage of policy, no defense is owed. In that respect, the court held that "[i]n a case of doubt such doubt ought to be resolved in the insured's favor." p. 616. The court agreed with the insured that "the duty to defend is broader than the duty to pay," p. 616, but described the claim in that suit as "clearly beyond the coverage of the policy" because it was "plain that such a claim was outside the policy coverage," p. 616, and held there was no duty to defend.

Although basically a duty to defend and a duty to pay are to some extent coextensive, the insurance company's duty to defend its assured is usually said to be broader than its duty to pay a judgment against him, *Boyle*, p. 616. See also *Baker v. American Insurance Co. of Newark, N. J.*, 324 F.2d 748, 750 (4th Cir. 1963), *Lee v. Aetna Casualty & Security Co.*, 178 F.2d 750 (2d Cir. 1949), *Gray v. Zurich Ins. Co.*, 65 Cal.2d 263, 54 Cal.Rptr. 104, 419 P.2d 168, 171 (1966), *Babcock & Wilcox Co. v. Parsons Corp.*, 430 F.2d 531, 536 (8th Cir. 1970), *Cadwallader v. New Amsterdam Casualty Co.*, 396 Pa. 582, 152 A.2d 484, 489 (1959), *Lerner v. General Ins. Co. of America*, 245 S.E.2d 249 (Va.1978); Appleman, *Insurance Law and Practice*, § 4684.

A number of reasons are specified in the just cited cases as to why a liability insurer's duty to defend may be broader than its duty to pay a judgment against its assured or to indemnify him. First, whether or not there is a duty to defend is usually determined from the pleadings in a case, but whether there is a duty to pay a judgment or to indemnify an assured who has paid usually cannot be determined until the evidence has been heard. Second, with the great latitude with which pleadings are construed today, and the great latitude of amendment, an insured's right to a defense should not be foreclosed unless such a result is inescapably necessary. Third, if part of a plaintiff's claims against an insured fall within the coverage of a policy and part do not, the company should defend all, although it might eventually be required to pay only some, claims. Fourth, while there may be some policy considerations which preclude protecting a wrongdoer from having to pay for an intentional injury he has caused, those same policy considerations do not foreclose the defense of an accused party who has not yet been found to be guilty. There may be additional reasons but these are especially applicable to the case now before us.

Although a policy such as CNA issued Donnelly is known generally as a professional liability insurance policy or as malpractice insurance, specifically Donnelly was protected against becoming "obligated to pay as damages because of any act or

omission . . . arising out of the performance of professional services for others in the insured's capacity as a lawyer." If any of the three charges made against Donnelly in the MacNeil suit could arguably fall within the above definition taken from the policy, CNA owed Donnelly the duty of a defense on all charges. In this connection, we focus our attention upon the amended complaint filed against Donnelly by Mac-Neil as representative of the estate of Kunz.

The first cause of action asserted against Donnelly may be found in paragraphs 2, 3, 4, 5, 7, 8, and 9 thereof, which are as follows:

"2. Plaintiffs decedent since some time prior to February 23, 1971 was the owner of the following securities: . . .

"3. On or about February 18, 1971, the Defendant John J. Donnelly took from the possession of Catharine W. Kunz certificates representing the securities referred to in paragraph 2 above.

"4. On or about February 18, 1971, the Defendant John J. Donnelly caused Catharine W. Kunz to sign certain stock powers in blank.

"5. On or about February 23, 1971, the Defendant John J. Donnelly, without the knowledge or consent of Catharine W. Kunz, delivered to the Defendant Ferris & Company Incorporated for sale the certificates referred to in paragraph 3 above.

\* \* \* \* \* \*

"7. During the period from about February 23, 1971, to about March 2, 1971, the corporate Defendant, without the knowledge or consent of Catharine W. Kunz, sold the aforesaid securities for the amount of Seventeen Thousand Seven Hundred Forty Three Dollars ($17,743.00) pursuant to the instructions of the Defendant Donnelly and further pursuant to the instructions of said Defendant Donnelly caused the proceeds of the sale less taxes and commissions to be deposited in the account of Margaret E. Clogston, all being done without the knowledge or consent of Catharine W. Kunz.

"8. Defendant Donnelly in possessing himself of said securities and selling said securities acted with intent to deceive Catharine W. Kunz, and he acted in concert with the corporate defendant to deprive Catharine W. Kunz of her property.

"9. Catharine W. Kunz demanded the return of her securities from the Defendants, but they refused to return said securities or the value of said securities to her."

One view of the above quoted allegations is that they charge a lawyer with having misused property of his client. We are not concerned on this appeal with the truth of Donnelly's explanation that his sale of the securities was to apply on his fee. It is evident to us that a misuse by an attorney of property belonging to his client is beyond argument "an act . . . arising out of the performance of professional services . . . ." It is certainly a violation of the fiduciary duty an attorney owes to his client, and fairly may be said to charge a "dishonest, fraudulent, criminal or malicious act."

The second charge against Donnelly in the amended complaint is set forth in paragraphs 11 to 15 thereof:[4]

"11. On November 24, 1970, Catharine W. Kunz, at Defendant John J. Donnelly's urging, made out a personal check . . . to Margaret E. Clogston in the amount of Twenty Thousand Dollars ($20,000), drawn on Catharine W. Kunz' checking account with the . . . Bank of America. Mrs. Kunz and Mrs. Clogston were sisters, and at the time of

---

**4.** The significance of Kunz's $20,000 check, and the memorandum note for $20,000 executed by Donnelly in the name of Clogston, later lost, and still later replaced by substitute, is quite confused in the record. At times it was regarded as merely a personal debt by Donnelly to Kunz. It is interesting that CNA originally considered that charge as the one that it would be willing to defend. Mrs. MacNeil admittedly vacillated between considering the $20,000 loan as the obligation of Mrs. Clogston, her aunt, or the personal obligation of Donnelly. As a witness at the trial, she admitted that she was keeping her options open by proceeding on both theories.

the events set forth in this complaint were both elderly widows.

"12. On November 25, 1970, Defendant John J. Donnelly presented the aforesaid check at the . . . Bank of America, and exchanged it for a cashier's check. . . . In so doing, Donnelly purported to act as Mrs. Kunz' attorney.

"13. Donnelly was not authorized by Mrs. Kunz to exchange her personal check for a cashier's check. He did so to facilitate the appropriation of the Twenty Thousand Dollars ($20,000) represented by Mrs. Kunz' check to his own use.

"14. In obtaining the aforesaid personal check from Mrs. Kunz, Donnelly misrepresented to her that the money was to be used for the benefit of her sister, Margaret E. Clogston. In fact, the money was not so used but was instead applied to Donnelly's own use. Donnelly's actions were taken with the intent to deceive Mrs. Kunz and deprive her of her property.

"15. Donnelly is personally liable to the estate of Mrs. Kunz on the Twenty Thousand Dollars ($20,000) "memorandum" note dated November 24, 1970, which he signed purportedly on Mrs. Clogston's behalf. No part of the principal or interest on that note has been paid, although it is overdue."

Again, it is beyond argument that the acts charged in paragraphs 11–15 of the complaint charged acts or omissions of Donnelly in the performance of his services as a lawyer. It also may be said that one view of such allegations is that, standing alone, they might be said to charge dishonest, fraudulent, criminal or malicious acts.

The complaint then alleged in paragraph 16, obviously referring to all those quoted paragraphs above, that:

"16. At the time of the transactions set forth above, Donnelly purported to be acting as the attorney for both Mrs. Kunz and Mrs. Clogston, but was serving his own interests at the expense, and in breach of his fiduciary duties."

Especially reading the first quoted paragraphs of the complaint with paragraph 16, we think the complaint might be construed, as to claim 1, either that Donnelly had misused property of his client which might be a dishonest, fraudulent, criminal or malicious act, or that Donnelly might be liable on account of the sale of the stock and a transfer of the proceeds of the sale to Mrs. Clogston, the sister of Mrs. Kunz, simply in violation of "his fiduciary duties." In this respect, we note that the complaint carefully refrained from alleging that Donnelly converted the proceeds of the stock sold to his own use.

The incident of the $20,000 check is even more clear. As noted, it could be read to allege that Donnelly's acts were within the excluded risk. But it also could be read to charge liability on the $20,000 note: "Donnelly is personally liable to the estate of Mrs. Kunz on the Twenty Thousand Dollars ($20,000) 'memorandum' note." And further it could also be read to permit recovery against Donnelly if the plaintiff proved only that Donnelly accepted, or signed, the note on Mrs. Clogston's behalf, without authority, or "in violation of his fiduciary duties."

■ With these thoughts in mind, we are of opinion that at the very least the claim with respect to the stock and the $20,000 check were not "clearly beyond the coverage of the policy." *Boyle*, p. 616. When we resolve any doubt in favor of the insured, it is not "plain" that the claims are "outside the policy coverage." *Boyle*, p. 616.

■ If a complaint, however ambiguous, may be read as premising liability on alternative grounds, and either ground states liability potentially or arguably covered by the policy, the insured is entitled to a defense. *Babcock and Wilcox Company v. Parsons Corporation*, 430 F.2d 531 (8th Cir. 1970). We apply that rule here.

While the continuing validity of the general rule requiring that a determination of whether or not to defend be made from the face of the complaint may be doubtful in view of notice pleading with its uncertainties, see *Babcock and Wilcox*, p. 536, we

have no reason to depart from it here.[5] It is the stated rule in the District of Columbia and permits the finding in this case that Donnelly was owed a defense.

CNA's alternate reason for denying Donnelly a defense is that he is precluded from a defense by the provision in the policy that:

"This policy does not apply:

"(a) to any dishonest, fraudulent, criminal or malicious act or omission of any insured, partner or employee;"

▮▮▮▮ In the first place, it is to be noted that the policy makes no express reference to the insurance company being excused from defending suits in which dishonest, fraudulent, criminal or malicious acts are alleged. While, as noted, there may be sound policy reasons why an insured should not be indemnified from the consequences of acts such as those enumerated, there are no similar reasons why an innocent person, charged with such acts, should not have the benefit of a defense. Policy language, susceptible of more than one interpretation, is construed, if reasonably possible, to provide coverage.

In *Conner v. Transamerica Ins. Co.*, 496 P.2d 770 (Okl.1972), plaintiff, an attorney, represented a bankrupt corporation in connection with a bankruptcy proceeding. The president of the bankrupt corporation later sued 35 persons, including plaintiff, for conspiracy to defraud him in connection with the bankruptcy proceeding. It was held that plaintiff's liability insurance carrier owed him the duty of a defense. *Conner* is an even stronger case for the insurance company than the case at bar, and we cannot improve on the statement of that case in the syllabus by the court as stating the law which we apply here:

"In interpreting the language of an ambiguous contract of insurance, defining the scope of the insurer's liability, words of inclusion are liberally construed in favor of the insured and words of exclusion are strictly construed against the insurer. Accordingly, where insurer expressly agrees to defend insured against any suit, "even if any of the allegations of the suit are groundless, false or fraudulent;" and such policy contains an exclusion clause providing that "This policy does not apply to any dishonest, fraudulent, criminal or malicious act or omission of any insured . . . ;" such exclusion clause shall not be interpreted to mean that "This policy does not apply to the defense of any suit charging the insured with any dishonest, fraudulent, criminal or malicious act or omission." 496 P.2d 770.

CNA relies upon *Boyle* and *Battisti v. Continental Casualty Company*, 406 F.2d 1318 (5th Cir. 1969), as supporting its contention that it was excused from defending Donnelly because of the allegations of fraud in the MacNeil amended complaint. *Battisti* is similar but not the same as the case now being considered. Battisti was a lawyer who had advised both sides (the Staples) in a divorce case and had not advised the husband that divorce makes void a will in Florida. The wife executed a will of all of her property to the husband as a part of the divorce property settlement. Shortly after the divorce, the wife executed a new will in which Battisti's wife was made a major beneficiary and Battisti her executor of the new will. Shortly thereafter, the ex-Mrs. Staples committed suicide. Staples sued Battisti to impress a trust upon the estate because of alleged fraud in his representation. It was held that Battisti's liability insurance carrier was not required to defend the suit against him under an exclusion of claim similar to the one at hand, the court finding that only fraud was alleged.

Donnelly distinguishes *Boyle* and *Battisti* upon the ground that under the complaints filed in those cases no basis for recovery was possible except one outside the coverage of the policy. He argues, and we believe correctly, that, although MacNeil al-

---

5. One construction of the letter from Mrs. Kunz' attorney to Donnelly dated October 1, 1971 indicates, of course, that all Donnelly may have done in connection with the $20,000 check was to replace one note with another having different conditions, an act obviously within the coverage of the policy.

leged fraud on the part of Donnelly, she could have recovered under her complaint by proof of improper but non-fraudulent conduct. Another valid distinction of *Boyle* is that that case did not concern itself with construing an exclusion as applied to the duty to defend; rather it held that the cause of action alleged was not within the definition of coverage in the policy. *Boyle* also, as previously mentioned, held that the duty to defend was broader than the duty to pay.

Accordingly, we believe that *Battisti* is not persuasive, and that our decision is not in conflict with *Boyle*. We find the reasoning of *Conner* more persuasive than that of *Battisti* as they may be said to be in conflict. Thus, we hold that, absent policy provisions to the contrary, a policy exclusion such as found in this case does not exclude a defense.

█ Finally, CNA argues that coverage of willful, deliberate or fraudulent acts by liability insurance would be contrary to public policy. Assuming without deciding that the proposition is true, we know of no public policy which would prevent insurance from covering the defense of such a claim.

The judgment of the district court is reversed and the case remanded for the ascertainment of Donnelly's damages.

REVERSED AND REMANDED.