823 F.2d 549
Unpublished Disposition
 NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
C. J. WARRILOW, lead interested underwriter at Lloyds,
London, England; Imperial Casualty and Indemnity
Company, Plaintiffs-Appellees,
v.
BIRSCH CHEMICALS, LTD., a Virginia corporation; JOHN M.
BIRSCH, SR.; JOHN M. BIRSCH, JR.; MILITARY,
REPAIR, INC., a Virginia corporation;
CHARLES NEWTON; ROBERT WOLFF,
Defendants-Appellants,
and
Robert Cantor; Federal Support Company, a Virginia
corporation; Herbert Fritz; Insinger Machine
Company, a Pennsylvania corporation;
Linda L. Beagle; Carl W.
Newton; C. L.
Richard
Co., Defendants.
 No. 86-2557
 United States Court of Appeals, Fourth Circuit.
 Argued Nov. 12, 1986.
Decided July 6, 1987.
 
 Phillip L. Russo, Jr. (George J. Dancigers; Heilig, McKenry, Fraim & Lollar, on brief), for appellants.
 Stylian P. Parthemos (Joseph S. Bambacus; Bambacus & Parthemos; James W. Tredway, III; Christian, Barton, Epps, Brent & Chappell, on brief), for appellees.
 Before CHAPMAN, Circuit Judge, HAYNSWORTH, Senior Circuit Judge, and MAXWELL, United States District Judge for the Northern District of West Virginia, sitting by designation.
 PER CURIAM:
 
 
 1
 This appeal is from an order in four consolidated declaratory judgment actions in the diversity jurisdiction brought by two insurance carriers to determine their duty to defend three lawsuits brought against their insureds. The district court found that no duty to defend by either insurance carrier had arisen.
 
 
 2
 We now affirm, but on grounds differing somewhat from those stated by the district court.
 
 I.
 
 3
 C. J. Warrilow, as lead interested underwriter at Lloyds of London, issued a general liability policy to Birsch Chemicals, Inc., its sister company, Military Repair, Inc., the two owners of the companies, John M. Birsch, and John M. Birsch, Jr. and Charles Newton. Birsch Chemicals, a Virginia corporation, manufactures and sells soap and soap products. Its primary customer is the United States Navy that uses Birsch's soap in its dishwashing machines aboard Navy vessels. Military Repair, also a Virginia corporation, sells and services dishwashers and dishwasher parts.
 
 
 4
 On January 1, 1985, Birsch changed its liability insurance carrier. Effective on that date, Imperial Casualty and Indemnity Company issued its general liability policy to Birsch. The policy is substantially similar to the Lloyds' policy, and the provisions of the two policies relevant to these controversies are identical.
 
 II.
 
 5
 In 1985, Federal Support, a Virginia corporation engaged in the retail sales and service of dishwasher parts, filed an action in a Virginia state court against Birsch and others alleging primarily violations of Virginia antitrust law. Birsch called upon both Lloyds and Imperial to defend the action, but each refused upon the ground that the claims were not within the coverage of its policy. Each of the insurers filed a declaratory judgment action in the United States District Court for the Eastern District of Virginia, seeking a declaration that its insurance policy did not provide coverage for the claims pled by Federal Support.
 
 
 6
 Also in 1985, C. L. Richard Co., Inc. filed an action in a Virginia court against the Birsch defendants, alleging that they had knowingly slandered it and its sales representative, Linda L. Beagle. There were some variations in the alleged slanderous remarks, but, in essence, the allegations are of repeated statements by defendants and representatives of defendants to personnel of the United States Navy that Linda Beagle was providing sex to naval procurement officials in exchange for business for Richard Co.
 
 
 7
 Linda Beagle also filed an action for defamation against the Birsch defendants, alleging substantially the same slanderous remarks about her as had been alleged by Richard Co.
 
 
 8
 Imperial refused to defend the Richard Co. and Beagle claims and filed two actions in the United States District Court for the Eastern District of Virginia, one against Richard Co. and the other against Beagle, seeking a declaration that it was not obligated to defend either of those actions.
 
 
 9
 No question of any duty of Lloyds to defend the Birsch defendants in the Richard Co. and Beagle actions is before us. Among the four consolidated actions before us are two, one by each of the insurers, to determine their duty to defend the Federal Support action. The other two are those brought by Imperial to determine its duty to provide a defense in the Richard Co. and Beagle actions.
 
 III.
 
 10
 Virginia law governs these cases and provides that the duty to defend arises '[w]hen an initial pleading 'alleges facts and circumstances, some of which would, if proved, fall within the risk covered by the policy." Parker v. Hartford Fire Insurance Co., 278 S.E.2d 803, 804 (Va. 1981) (quoting Lerner v. General Insurance Co. of America, 245 S.E.2d 249, 251 (Va. 1978)); see also Reisen v. Aetna Life & Casualty Co., 302 S.E.2d 529, 531 (Va. 1983). The duty to defend under the terms of the insurance policy is determined from the face of the complaint. See Baker v. American Insurance Co., 324 F.2d 748, 750 (4th Cir. 1963); American and Foreign Insurance Co. v. Church Schools in the Diocese of Virginia, 645 F. Supp. 628, 631 (E.D. Va. 1986). The insurer may avoid the duty to defend '[o]nly when 'it appears clearly [the insurer] would not be liable under its contract for any judgment based upon the allegations." Parker, 278 S.E.2d at 804 (emphasis added by court) (quoting Travelers Indemnity Co. v. Obenshain, 245 S.E.2d 247, 249 (Va. 1978)).
 
 
 11
 Under both insurance policies, the insurers had 'the right and duty to defend any suit against the insured seeking damages on account of [a covered] injury, even if any of the allegations of the suit are groundless, false or fraudulent.' Both policies cover any liability resulting from 'personal injury or advertising injury . . . arising out of the conduct of the named insured's business.' This includes injuries from defamation. The policies, however, expressly exclude such injuries if 'made by or at the direction of the insured with knowledge of the falsity thereof', or if the first damaging aspersion to character occurred before the effective date of the policy.
 
 IV.
 
 12
 Birsch makes no claim that the state antitrust claims in Federal Support's complaint are covered by either insurance policy. They focus upon two generalized allegations in paragraphs 20 and 21 of Federal Support's complaint, charging that the defendants in that action made unspecified 'false and defamatory statements' that allegedly caused the Navy to cease doing business with Federal Support and to institute an unwarranted investigation into the operations of that company. Those unspecific allegations are buried in other allegations that clearly refer only to the antitrust claims. The district court construed the complaint as based upon antitrust violations only, and not on defamation, and thus concluded that neither policy provided coverage.
 
 
 13
 There is no doubt but that the antitrust claims are the crux of the complaint. That fact does not necessarily end the matter, however, for a properly pleaded defamation claim will support a judgment for damages flowing from the defamation even though the antitrust claims all fail. We are concerned with the principle that an insurer's duty to defend an action is determined by the factual allegations of the complaint and not by a characterization of those facts. The Virginia Supreme Court has held that an insurer, having a duty to defend claims of negligent, but not intentional, trespass to land would be required to defend an action alleging an intentional trespass to land if the specific factual allegations will support an ultimate conclusion that a negligent trespass had occurred though unintentional. See Parker, 278 S.E.2d at 804. See also Donnelly v. Transportation Insurance Co., 589 F.2d 761, 765-69 (4th Cir. 1978). This principle will hold true even if the alleged defamation occurred as part of the alleged conspiracy to put Federal Support out of business.
 
 
 14
 Birsch thus contends that Federal Support ultimately may recover damages for negligent defamation though the complaint alleges only intentional torts. We cannot agree, however, for, on the face of the complaint, there are no allegations of fact which would support an ultimate inference that an actionable defamation had occurred as a result of negligence. The defamation allegations are completely unspecific. They appear to be conclusions, and they are imbedded in allegations of tortious conduct which can only be intentional. We now must look only to the face of the complaint, and we cannot read into it specific allegations or hypothetical facts or circumstances.
 
 
 15
 Since there are no allegations of fact sufficient to invoke the duty to defend, we need not decide whether the Parker principle applies when the only covered claim stems from conduct separate from the other complained of conduct. Nor need we consider whether, had the defamation claims been well pleaded, there should be some division of defense responsibility in light of the fact that independent antitrust claims are clearly not within the policies' coverages.
 
 V.
 
 16
 Initially the Beagle and Richard Co. complaints alleged that the defamatory statements were made intentionally and with knowledge of their falsehood. Amended complaints were filed in both actions, however, in which it was alleged, in the alternative, that the defamatory statements were made negligently and recklessly. Because the two complaints incorporated by reference the allegations of the earlier counts, the district court concluded that the amended complaints still alleged only intentional wrongdoing.
 
 
 17
 We need not consider that matter, for Imperial's policy clearly and unequivocally excludes coverage for defamation when the first damaging aspersion to character occurred before the effective date of the policy.
 
 
 18
 In their complaints, both Richard Co. and Beagle alleged that the defamatory statements began in December 1983 or January 1984 and continued through 1984 and into 1985. There were some differences in the statements, but they all were allegedly a part of an effort by the Birsch defendants to disparage the Richard Co., primarily by slandering its sales representative, Linda Beagle. Imperial's policy did not come into effect until January 1, 1985, about a year after the campaign of alleged disparagement had been underway. Imperial's policy exclusion clearly applies. The district court properly concluded that it had no duty to defend the Beagle and Richard Co. actions. Lerner, 245 S.E.2d at 251; Obenshain, 245 S.E.2d at 249.
 
 
 19
 AFFIRMED.