**UNPUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

HARDWOOD PLYWOOD AND VENEER
ASSOCIATION, an Illinois Corporation
for its own use and for the use of
Gulf Underwriters Insurance
Company,
<u>Plaintiff-Appellant,</u>

No. 97-2498

v.

MASSACHUSETTS BAY INSURANCE
COMPANY, a New Hampshire
Corporation,
<u>Defendant-Appellee.</u>

Appeal from the United States District Court
for the Eastern District of Virginia, at Alexandria.
Albert V. Bryan, Jr., Senior District Judge.
(CA-97-434-A)

Argued: April 7, 1998

Decided: July 27, 1998

Before MURNAGHAN, NIEMEYER, and MOTZ, Circuit Judges.

_____

Affirmed by unpublished per curiam opinion.

_____

**COUNSEL**

**ARGUED:** Brock R. Landry, VENABLE, BAETJER, HOWARD &
CIVILETTI, Washington, D.C., for Appellant. John Mason Claytor,

HARMAN, CLAYTOR, CORRIGAN & WELLMAN, Richmond, Virginia, for Appellee. **ON BRIEF:** Michael W. Robinson, VENABLE, BAETJER & HOWARD, McLean, Virginia, for Appellant. Elizabeth E.S. Skilling, HARMAN, CLAYTOR, CORRIGAN & WELLMAN, Richmond, Virginia, for Appellee.

_____

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

_____

**OPINION**

PER CURIAM:

Appellant, Hardwood Plywood and Veneer Association (HPVA), brought suit against its insurer, Massachusetts Bay Insurance Co. (MBI), seeking to require MBI to provide a defense in a lawsuit brought against HPVA by the Sizemore family. The Sizemores were injured in a house fire which they maintained was worsened by hardwood paneling manufactured by one of HPVA's member organizations, Georgia-Pacific Corporation. The district court granted summary judgment to MBI on the ground that the Sizemores' allegations were excluded from coverage by the policy's "Products-Completed Operations Hazard" provision. On appeal, HPVA argues that the district court's interpretation of the insurance policy was erroneous. Finding no error, we affirm.

I.

On December 1, 1991, a fire broke out in the South Carolina home of the Sizemore family, causing injuries to the family and their property. Believing that the fire was made more dangerous by the presence of unusually flammable paneling in their kitchen, the Sizemores filed a products liability action against the manufacturer of the paneling, Georgia-Pacific, and its trade association, HPVA.

HPVA is a not-for-profit trade association whose members are manufacturers and distributors of hardwood plywood and veneer

2

products and suppliers to the industry. HPVA provides a wide range of services to its members, including advocacy with federal agencies, participation in the development of model building codes, industry promotion, and certain research and testing services, including the testing of hardwood paneling for various aspects of flammability.

For a number of years prior to the Sizemore fire and thereafter, HPVA purchased an occurrence-based general commercial lines insurance policy (Policy) from MBI. The Policy required MBI to defend and indemnify HPVA with respect to claims alleging bodily injury or property damage. Upon learning of the Sizemores' lawsuit, HPVA contacted MBI and requested a defense.[1] MBI refused on the grounds that the Sizemores' claims were outside the scope of the Policy.

In March of 1996, HPVA requested and was granted summary judgment against the Sizemores. See Sizemore v. Georgia Pacific Corp., No. CIV.A.94-2894-96, 1996 WL 498410 (D.S.C. March 8, 1996). The Sizemores appealed that judgment to the United States Court of Appeals for the Fourth Circuit, which affirmed summary judgment in favor of HPVA. See Sizemore v. Hardwood Plywood & Veneer Ass'n, No. 96-1587 (4th Cir. June 4, 1997).

On March 28, 1997, HPVA commenced the present lawsuit against MBI in the United States District Court for the Eastern District of Virginia, seeking a declaration that MBI owed a duty of defense to HPVA and damages and attorneys' fees arising from the breach of such duty. Following discovery, the district court granted summary judgment to MBI on the ground that the Policy's Products-Completed Operations Hazard exclusion applied to each of the Sizemores' allegations. This appeal followed.

_____

[1] HPVA also notified Gulf Underwriters Insurance Company (Gulf), which had issued a specialty errors and omissions policy for claims made between December 1, 1994 and December 1, 1995. Gulf agreed to provide a defense to HPVA pursuant to a reservation of rights letter and, thereafter, paid the legal fees and expenses incurred by HPVA in the Sizemore litigation. It is undisputed that the MBI Policy, if it applies, is primary vis-a-vis the Gulf policy. Therefore, the current litigation is to determine if Gulf will be reimbursed by MBI for defense expenditures Gulf made on behalf of HPVA.

II.

HPVA maintains that the district court erred in granting summary judgment to MBI. We review the district court's grant of summary judgment de novo, applying the same standard as the trial court. See M & M Med. Supplies & Serv., Inc. v. Pleasant Valley Hosp., Inc., 981 F.2d 160, 163 (4th Cir. 1992) (en banc) (citation omitted). Pursuant to Fed. R. Civ. P. 56(c), summary judgment is appropriate if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. See also M & M , 981 F.2d at 162-63.

We begin by addressing the threshold issue of which forum's law governs the parties' dispute. A federal court exercising diversity jurisdiction, as in the present case, must apply the substantive law of the state in which it sits. See Erie R.R. Co. v. Tompkins, 304 U.S. 64, 78-79 (1938). That includes applying the forum state's choice of law rules. See Klaxon Co. v. Stentor Elec. Mfg. Co. , 313 U.S. 487, 496 (1941). Under Virginia law, contracts are interpreted according to the law of the lex loci, meaning the state where the contract was made. See Frye v. Commonwealth, 345 S.E.2d 267, 272 (Va. 1986) ("[Q]uestions of substantive law are governed by the law of the place of the transaction . . . ."). In the present case, the parties agree that our interpretation of the Policy, which was issued and delivered in Virginia, is governed by the law of that state.

In Virginia, an insurer has no common law or statutory duty to defend a policy holder. Therefore, a duty to defend, if one exists, arises only as a matter of contract. See Town Crier, Inc. v. Hume, 721 F. Supp. 99, 101 (E.D. Va. 1989). To determine whether a duty to defend arises under Virginia law, courts typically follow a two-step inquiry. See Fuisz v. Selective Ins. Co. of America, 61 F.3d 238, 242 (4th Cir. 1995) (citing Town Crier, 721 F. Supp. at 103). First, the court examines the scope of coverage provided by the policy, including all relevant coverage and exclusion clauses. See id. Next, the court determines whether the allegations contained in the complaint fall within the scope of the policy. See id. The insurer has a duty to defend so long as at least one of the complaint's allegations is arguably covered by the policy. See Donnelly v. Transp. Ins. Co., 589 F.2d 761, 767 (4th Cir. 1978) ("If a complaint, however ambiguous, may be read as premising liability on alternative grounds, and either ground

4

states liability potentially or arguably covered by the policy, the insured is entitled to a defense.") (citation omitted).

Virginia courts interpret insurance policies according to the standard rules of contract construction, modified slightly for special circumstances arising in the insurance context. See Town Crier, 721 F. Supp. at 101 (citation omitted). As with other contracts, the starting point for an interpretation of an insurance policy is the plain language of the parties' agreement. See State Farm Fire & Cas. Co. v. Walton, 423 S.E.2d 188, 191 (Va. 1992) (citation omitted). If the language of the policy is unambiguous, courts simply apply the terms of the agreement as written. See id. (citations omitted). If, on the other hand, the policy contains an ambiguity, courts construe the uncertain language in favor of the policy holder. See Town Crier , 721 F. Supp. at 101. Hence, ambiguous policy provisions are construed to grant coverage rather than deny it. See id.

The scope of coverage provided by a policy may be limited by the presence of exclusions. However, it is well-settled that an exclusion applies only when it "unambiguously bring[s] the particular act or omission within its scope." Fuisz, 61 F.3d at 242 (quoting Floyd v. Northern Neck Ins. Co., 427 S.E.2d 193, 196 (Va. 1993)). Where, as here, the policy contains more than one exclusion, the court must determine whether the allegations contained in the complaint survive each of the various exclusions. See generally American Reliance Ins. Co. v. Mitchell, 385 S.E.2d 583, 585-87 (Va. 1989) (discussing whether either of two exclusions bar coverage for injuries alleged); Fuisz, 61 F.3d at 242-46 (same). Therefore, no duty to defend arises if each of the allegations falls within at least one of the policy's exclusions. See Nationwide Mut. Ins. Co. v. Wenger , 278 S.E.2d 874, 875-76 (Va. 1981).

With these principles in mind, we now turn to the facts of the present case to determine whether the Policy gives rise to a duty to defend on the part of MBI. Following the two-step analysis described above, we first consider the terms of the Policy, including all relevant coverage and exclusion clauses. We then consider whether the allegations contained in the Sizemores' complaint fall within the scope of the Policy.

5

A. The Policy

The Policy requires MBI to defend and indemnify HPVA with respect to claims arising between May 1, 1991 and May 1, 1992. The following provision, subject to exclusions, defines the scope of coverage:

> a. We will pay those sums that the insured becomes legally obligated to pay as damages because of bodily injury and property damage to which this insurance applies. . . . The "bodily injury" or "property damage" must be caused by an "occurrence." . . . We will have the right and duty to defend any "suit" seeking those damages.

Under the Policy, an "`occurrence' means an accident, including continuous or repeated exposure to substantially the same general harmful conditions."

The Policy contains three potentially relevant exclusions. The first is the Intended-Expected Injury exclusion, which denies coverage for "`bodily injury' or `property damage' expected or intended from the standpoint of the insured." The second is the Products-Completed Operations Hazard exclusion, which bars coverage for "all `bodily injury' and `property damage' occurring away from premises you own or rent and arising out of `your product'**2** or `your work'**3**. . . ." The third and final exclusion is the Designated Professional Services exclusion, which bars coverage for "`bodily injury' [or] `property

_____

**2** The Policy defines "your product" as "[a]ny goods or products, other than real property, manufactured, sold, handled or disposed of by: (1) You; [or] (2) Others trading under your name . . . ." It includes "warranties or representations made at any time with respect to the fitness, quality, durability or performance of any of the items [listed] . . . above."

**3** The Policy defines "your work" as "[w]ork or operations performed by you or on your behalf . . . ." It includes "warranties or representations made at any time with respect to the fitness, quality, durability or performance of any of the items [listed] . . . above."

6

damage' . . . [arising from] the rendering or failure to render any professional service."**4**

B. <u>The Complaint</u>

The complaint is divided into three claims, each of which makes multiple allegations of wrongdoing on the part of HPVA. We have carefully considered each of the allegations in light of the Policy. For the reasons stated below, we hold that each of the allegations falls within at least one of the Policy's exclusions.

The first claim raises thirteen separate allegations. Because the precise language of the allegations is relevant, we find it necessary to quote them at length:

> HPVA was grossly negligent, reckless, willful, wanton, and fraudulent in the following and other particulars, to-wit:
>
> a) In assisting its members, including Georgia-Pacific in placing into the stream of commerce panelling [sic] which HPVA knew was unreasonably dangerous to the end user, Sizemore, in that it would rapidly accelerate a fire beyond the expectations of the ordinary consumer in a matter of minutes;
>
> b) In misrepresenting to the public, building code officials, federal and state governmental agencies the physical properties and flammability of such panelling [sic];
>
> c) In failing to warn builders, governmental agencies, and users of the panelling [sic] of the dangers associated therewith;
>
> d) In making a conscious decision against incorporating the use of fire retardants in such panelling [sic] despite the knowledge that such use would dramatically reduce

_____

**4** The exclusion is expressly limited to the work of "analytical chemists."

the flame spread of the panelling [sic] in the event of a fire;

e) In withholding from federal and state governmental agencies, building code officials, the construction industry, and the consuming public, test results showing the benefits and reduction of flame spread through the use of flame retardants associated with such panelling [sic];

f) In placing concerns of profit of its members, including Georgia-Pacific, above the safety of the consuming public as it relates to the addition of fire retardants to such Panelling;

g) In suppressing and covering up the existence of safer alternative designs of such panelling [sic];

h) In sponsoring testing of such panelling [sic], by so-called independent laboratories and thereafter manipulating the test procedures and conclusions of the independent laboratory prior to publishing its report;

i) In using manipulated test results and conclusions when vigorously opposing the passage of more restrictive regulatory codes which would have made such panelling [sic] dramatically safer to the consuming public;

j) In hiding from federal and state governmental agencies, building code officials, and the consuming public the feasibility of safer alternatives in the design of such panelling [sic] to reduce flame spread;

k) In assisting Georgia-Pacific in falsely advertising to the consuming public that its panelling [sic] with acryglass finish was fifty per cent (50%) more effective in reducing flame spread than other panelling [sic] when, in fact, such statement was false;

8

l)  In failing to notify the consuming public (including Sizemore) and/or any regulatory agencies, including the Consumer Product Safety Commission, of the hazardous and unsafe condition of the panelling [sic] in Sizemore's home when HPVA knew of its unsafe condition from the date of its entry into the stream of commerce until the date of the fire; and

m) In disseminating or assisting in the dissemination of false and misleading reports and publications concerning the flammability and safety of such panelling[sic].

With the language of the first claim in mind, the relevant question is whether any of the allegations triggers a duty to defend on the part of MBI.

We conclude that they do not. As an initial matter, we hold that the allegations in paragraphs (b), (g), (h), (i), (j), (k), and (m) are plainly excluded from coverage, since those paragraphs make claims of intentional misconduct on the part of HPVA.[5]  With respect to the remaining paragraphs of the first claim, we agree with the district court that each of the allegations pertains to HPVA's "work" and is, therefore, properly excluded by the Products-Completed Operations Hazard exclusion.[6] Consequently, we hold that none of the allegations in the first claim triggers a duty to defend on the part of MBI.

_____

[5] Claims of intentional misconduct fall outside the Policy's definition of an "occurrence," which is expressly limited to accidental injuries. Likewise, such claims are barred from coverage by the Policy's Intentional or Expected Injury exclusion. We are aware that, under a generous reading, other allegations in the first claim might also be interpreted as allegations of intentional injury. However, for purposes of the Intentional or Expected Injury exclusion, those claims are ambiguous, and thus not excludable, since it is not clear whether the injuries alleged are based on intentional, reckless, or negligent misconduct.

[6] As the district court properly found, the allegations in paragraphs (a), (d), (e), and (f) relate to the advertising, marketing, and testing of hardwood paneling. The same can be said of the allegations in paragraphs (c) and (l), since underlying the alleged failure to warn is an implied duty arising from HPVA's research and testing of hardwood paneling.

9

Notwithstanding our conclusion with respect to the first claim, if a duty to defend is created by the second or third claims, MBI has a duty to defend the entire lawsuit. See Donnelly , 589 F.2d at 767. Therefore, we must determine whether the allegations in those claims survive the Policy's exclusions.

The second and third claims provide in pertinent part as follows:

> [T]he Conspirators [including HPVA] conspired among themselves to sponsor so-called independent laboratory testing of the Panelling . . . .

> During the course of testing, the Conspirators conspired to manipulate the testing procedures utilized . . . to manipulate the results and conclusions drawn by the laboratory and, further, to limit dissemination of test results using hardwood panelling [sic] treated with fire retardant . . . while making the . . . manipulated [non-fire retardant results] readily available to [government agencies and others]. . . .

> . . .

> [T]he flammability of the Panelling constituted a substantial product hazard within the meaning and provisions of the Consumer Product Safety Act . . . .

> HPVA . . . knowingly violated the Act and the rules and regulations of the Consumer Product Safety Commission . . . in the following respects:

> a) By concealing from the Commission the substantial product hazard of the Panelling;

> b) By failing to report to the Commission the substantial product hazard of the Panelling . . .

> c) By the acts and omissions set forth . . . above.

We have carefully considered the second and third claims in light of the Policy, and we are persuaded that they are properly excluded

10

from coverage. The majority of the allegations are of intentional misconduct, and the remainder are readily excluded as pertaining to HPVA's "work." We therefore conclude that the second and third claims, like the first, create no duty to defend on the part of MBI.

III.

In summary, we hold that each of the allegations contained in the Sizemores' complaint is excluded from coverage by either the Intentional or Expected Injury exclusion or the Products-Completed Operations Hazard exclusion.[7] The judgment of the district court is, therefore,

AFFIRMED.

_____

[7] This conclusion renders it unnecessary to consider MBI's alternative contention that certain allegations may also be barred by the Designated Professional Services exclusion.

11